AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Subject Premises at 7317 Elaine Street  Blaine, WA 98230 and Subject Person of JON LAKEY

) ) ) ) ) )

Case No.     MJ20-022

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Subject Premises and Person as further described in Attachment A, attached hereto and incorporated herein by this reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

✓ See attached Affidavit continued on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Toby G. Ledgerwood, Special Agent (HSI)
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  _____ 01/17/2020 _____

_____
*Judge's signature*

City and state:  Seattle, Washington

Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Description of Property to be Searched**

The physical address of the SUBJECT PREMISES is 7317 Elaine Street, Blaine, Washington, and is more fully described as the property containing a manufactured residence with gray colored siding and white trim around the windows.  The numbers 7317 are affixed in black lettering on a white in color pillar to the right side of the front door when facing the residence from the street.  There are windows located on either side of the door.



ATTACHMENT A - 1
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The search is to include all rooms within the SUBJECT PREMISES, and all garages or storage rooms, attached or detached, or other outbuildings, and any digital device(s) found therein.  However, if law enforcement can reasonably determine onsite that the SUBJECT PERSON neither owns nor has access to a particular digital device, this warrant does not authorize the search or seizure of any such digital device.

The SUBJECT PERSON is further described as JON LAKEY, DOB XX/XX/74, pictured below:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media;

2.      Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any non-digital recording devices and non-digital media capable of storing images and videos.

7.      Digital devices and/or their components, which include, but are not limited to:

a.      Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above;

ATTACHMENT B - 1
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    b.  Any digital devices used to facilitate the transmission, creation,

2 display, encoding or storage of data, including word processing equipment, modems,

3 docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

4    c.  Any magnetic, electronic, or optical storage device capable of

5 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

6 memory buffers, smart cards, PC cards, memory sticks, flash drives, USB/thumb drives,

7 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

8    d.  Any documentation, operating logs and reference manuals regarding

9 the operation of the digital device or software;

10    e.  Any applications, utility programs, compilers, interpreters, and other

11 software used to facilitate direct or indirect communication with the computer hardware,

12 storage devices, or data to be searched;

13    f.  Any physical keys, encryption devices, dongles and similar physical

14 items that are necessary to gain access to the computer equipment, storage devices or

15 data; and

16    g.  Any passwords, password files, test keys, encryption codes or other

17 information necessary to access the computer equipment, storage devices or data;

18   8.  Evidence of who used, owned or controlled any seized digital device(s) at

19 the time the things described in this warrant were created, edited, or deleted, such as logs,

20 registry entries, saved user names and passwords, documents, and browsing history;

21   9.  Evidence of malware that would allow others to control any seized digital

22 device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

23 as evidence of the presence or absence of security software designed to detect malware;

24 as well as evidence of the lack of such malware;

25   10.  Evidence of the attachment to the digital device(s) of other storage devices

26 or similar containers for electronic evidence;

27   11.  Evidence of counter-forensic programs (and associated data) that are

28 designed to eliminate data from a digital device;

ATTACHMENT B - 2
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Evidence of times the digital device(s) was used;

13.     Any other ESI from the digital device(s) necessary to understand how the digital device was used, the purpose of its use, who used it, and when.

14.     Records and things evidencing the use of the IP address 172.98.86.39 (the SUBJECT IP ADDRESS) including:

a.     Routers, modems, and network equipment used to connect computers to the Internet;

b.     Records of Internet Protocol (IP) addresses used;

c.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENT B - 3
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT

STATE OF WASHINGTON      )

                                      )      ss

COUNTY OF WHATCOM      )

I, Toby Ledgerwood, being duly sworn on oath, depose and state:

## I. INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Assistant Special Agent in Charge (ASAC) Blaine, Washington, field office.  I have been employed as an HSI Special Agent since 2006.  Prior to this assignment, I worked as a United States Customs Inspector from 2002 to 2006.  In my capacity as a Special Agent, I am responsible for conducting investigations into the numerous federal laws enforced by HSI.  Since 2013, I have investigated criminal violations relating to child exploitation and child pornography, including violations pertaining to the unlawful production, importation, distribution, receipt, attempted receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252(a), and 2252A(a).  I am a graduate of the Federal Law Enforcement Training Center (FLETC), HSI Special Agent Training Program, and have received further specialized training in investigating child pornography and child exploitation crimes.  My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants.  I have observed and reviewed thousands of examples of child pornography (as defined in 18 U.S.C. § 2256(8)).  I have participated in the execution of many search warrants which involved child exploitation and/or child pornography offenses and the search and seizure of computers and other digital devices.  Further, I have served as the affiant on numerous search warrants and complaints relating to child exploitation investigations.  I am a

member of the Internet Crimes Against Children (ICAC) Task Force in the Western District of Washington, and work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children. I have attended periodic seminars, meetings, and training. I attended the ICAC Undercover Investigations Training Program in Alexandria, Virginia, in June 2014 regarding child exploitation. I also attended the Crimes Against Children Conference in Dallas, Texas, in August 2014, where I received training relating to child exploitation, including training in the Ares Peer to Peer (P2P) file sharing program. In September 2015, I received training in the Emule (P2P) file sharing program. I received a Bachelor of Science degree in Criminal Justice with a minor in Sociology from the University of Missouri-St. Louis.

2.      I am submitting this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence located at 7317 Elaine Street, Blaine, Washington 98230 (hereinafter the "SUBJECT PREMISES") and the person of JON LAKEY (DOB XX/XX/74 (hereinafter the "SUBJECT PERSON") more fully described in Attachment A, for the things specified in Attachment B to this Affidavit, for the reasons set forth below. I also seek authority to examine digital devices or other electronic storage media. The property to be searched is as follows:

a.      7317 Elaine Street, Blaine, Washington 98230 (the SUBJECT PREMISES); and

b.      The person of JON LAKEY, DOB XX/XX/74 (the SUBJECT PERSON).

3.      The warrant would authorize a search of the SUBJECT PREMISES and PERSON and the seizure and forensic examination of digital devices found therein, for the purpose of identifying electronically stored data as particularly described in Attachment B, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography).

SA LEDGERWOOD AFFIDAVIT - 2
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.     The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

5.     Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.  I have set forth only the facts that I believe are relevant to the determination of probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), will be found at the SUBJECT PREMISES or on the SUBJECT PERSON.

6.     Based on the discoveries I have made, as described below, I believe that the SUBJECT PERSON who resides at the SUBJECT PREMISES has used a computer or electronic device to connect to the Internet and distribute images depicting child pornography.  I further believe that computers and other digital devices containing evidence of child pornography will be located at the SUBJECT PREMISES or on the SUBJECT PERSON.

7.     This Affidavit is being presented electronically pursuant to Local Criminal Rule CrR 41(d)(3).

## II. DEFINITIONS

8.     The following definitions apply to this Affidavit:

### Internet Service Providers

a.     "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the internet.  ISPs provide a range of functions for their customers including access to the

SA LEDGERWOOD AFFIDAVIT - 3
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Internet, web hosting, email, remote storage, and co-location of computers and other

2   communications equipment.  ISPs can offer a range of options in providing access to the

3   Internet including telephone based dial up, broadband based access via digital subscriber

4   line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs

5   typically charge a fee based upon the type of connection and volume of data, called

6   bandwidth, which the connection supports.  Many ISPs assign each subscriber an account

7   name – a user name or screen name, an "email address," an email mailbox, and a

8   personal password selected by the subscriber.  By using a computer equipped with a

9   modem, the subscriber can establish communication with an ISP over a telephone line,

10  through a cable system or via satellite, and can access the Internet by using his or her

11  account name and personal password.  ISPs maintain records pertaining to their

12  subscribers (regardless of whether those subscribers are individuals or entities).  These

13  records may include account application information, subscriber and billing information,

14  account access information (often times in the form of log files), email communications,

15  information concerning content uploaded and/or stored on or via the ISP's servers.

16                              Internet Protocol (IP) Addresses

17          b.      "Internet Protocol address" or "IP address" refers to a unique

18  number used by a computer to access the Internet.  An IP address looks like a series of

19  four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every

20  computer connected to the Internet must be assigned an IP address so that the Internet

21  traffic sent from, and directed to, that computer may be properly directed from its source

22  to its destination.  Most ISPs control the range of IP addresses.

23                              Virtual Private Network (VPN)

24          d.      A VPN connection is a means of connecting to a private network

25  over a public network such as the Internet. A VPN is created by establishing a virtual

26  point-to-point connection through the use of dedicated connections, virtual tunneling

27  protocols, or traffic encryption. VPN's are also frequently used by people who wish to

28

SA LEDGERWOOD AFFIDAVIT - 4
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   circumvent geographic IP limitations and censorship, and to connect to proxy servers for

2   the purpose of obfuscating the source of an internet connection or transmission.

3   ### III. The CyberTip and ESP Apple Inc.

4   9.      This investigation arose from a CyberTip submitted to the National Center

5   for Missing and Exploited Children (NCMEC).  NCMEC is a private non-profit

6   organization operating under a Congressional mandate to act as the nation's law

7   enforcement clearing house for information concerning online child sexual exploitation.

8   In partial fulfillment of that mandate, NCMEC operates a CyberTip line, a resource for

9   reporting online crimes against children.  Electronic Service Providers (ESPs) report to

10  NCMEC, via the CyberTip line, whenever they discover that a subscriber has violated

11  the terms of service and/or their services have been used to transmit child pornography

12  over the Internet.

13  10.      The CyberTip giving rise to the instant investigation came from ESP Apple,

14  Inc., an electronic communication/service provider and digital device manufacturer

15  headquartered in Cupertino, California.

16  ### IV. STATEMENT OF PROBABLE CAUSE

17  11.      In October 2019, Homeland Security Investigations (HSI) Blaine,

18  Washington received CyberTip report #55619888 from the Seattle Internet Crimes

19  Against Children (ICAC) Task Force.  In the CyberTip, Apple reported one of its users,

20  Jon Lakey, using email address slave524@icloud.com, uploaded several images of

21  suspected child pornography from IP Address 172.98.86.39 (the SUBJECT IP

22  ADDRESS) on September 17, 2019.

23  12.      The uploads occurred in conjunction with attempts to send emails

24  containing images of suspected child pornography from slave524@icloud.com to

25  another email address.  The CyberTip also indictated that this email contained the text

26  "Sent from my iPhone," which is indicative of that email being sent using an Apple

27  iPhone.  However, an Apple representative confirmed in response to an inquiry from me

28

SA LEDGERWOOD AFFIDAVIT - 5
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    that Apple cannot definitively say whether or not the user of email address

2    slave524@icloud.com was in fact using an iPhone at the time.

3        13.    A query of a publicly available database revealed the SUBJECT IP

4    ADDRESS belonged to ISP Total Server Solutions.

5        14.    In response to an administrative summons seeking subscriber information

6    for the SUBJECT IP ADDRESS at the time of the upload of suspected child

7    pornography to Apple, Total Server Solutions responded with the following information:

8    "Hello, We received your subpoena request.  Total Server Solutions provides

9    Infrastructure this client. This specific client would have a client on their end that was

10   using the IP addresses provided in the subpoena. Hence, a subpoena directed towards

11   them to retrieve that customer information would be needed. We are unsure of logs that

12   our clients have as we just host their infrastructure within our data centers. We do not

13   manage the actual applications on those servers.  I have attached that information so you

14   can proceed. If anything additional is required please let me know."

15       15.    SA Ledgerwood reviewed the attachment, and the information provided

16   indicated the SUBJECT IP ADDRESS belonged to Tefincom S.A. located in Panama

17   City, Panama.

18       16.    On November 19, 2019, SA Ledgerwood sent a request for assistance to SA

19   Harry Schmidt HSI Panama.  On November 20, 2019, SA Schmidt responded with the

20   following; "appears that company is another server type company here in Panama. We

21   have seen it before."  "Send us the IP, dates, times, etc. that you want to look at and we

22   will do a subpoena through Panama prosecutors and hopefully obtain the subscriber

23   info."  To date, there has been no further information provided by SA Schmidt.

24       17.    From my training and experience, I believe it is likely the user of the email

25   account that was the subject of the Apple CyberTip was using a VPN to access that

26   account at the time Apple detected the attempted upload of child pornography to its

27   servers.  Thus, although the SUBJECT IP ADDRESS appears to be owned by a provider

28

1   in Panama, I believe it is likely that the user of that email account is located in the
2   Western District of Washington.

3       18.     Included with the CyberTip was identifying information associated with the
4   email address slave524@icloud.com, including the following:

5       Name: Jon Lakey

6       Address: 7317 Elaine Street, Blaine, Washington, 98230

7       Mobile Phone: 3605106600

8       19.     The same Apple representative explained that the name, address, and phone
9   number, were all provided by the user at the time of creation of the
10  slave524@icloud.com account.

11      20.     The Apple representative further explained, "I also went back and reviewed
12  the actual emails. As I mentioned, we use hash matching on outgoing email. When we
13  intercept the email with suspected images they do not go to the intended recipient.  This
14  individual [, slave524@icloud.com,] sent 8 emails that we intercepted. [Seven] of those
15  emails contained 12 images.  All 7 emails and images were the same as was the recipient
16  email address. The other email contained 4 images which were different than the 12
17  previously mentioned.  The intended recipient was the same.  I suspect what happened
18  was he was sending these images to himself and when they didn't deliver he sent them
19  again repeatedly.  Either that or he got word from the recipient that they did not get
20  delivered."

21      21.     Before submitting the CyberTip, employee(s) of Apple Inc examined each
22  of these images of suspected of child pornography.

23      22.     I have reviewed these images as well, which Apple provided as part of the
24  CyberTiP, and describe them below:

25

26

27

28

SA LEDGERWOOD AFFIDAVIT - 7
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**File 1**

This color image depicts a prepubescent female (hereinafter the "child victim"). The child victim is nude and laying on her stomach facing the camera. The child victim is nude from the waist down except for her socks. An erect penis is seen in front of the child victim's face. The child victim appears to have a large amount of ejaculate on her face near her mouth and nose. The child victim is very small in stature and lacks muscular development. The child victim appears to be approximately 6 to 8 years old.

**File 2**

This color image depicts a prepubescent female (hereinafter the "child victim"). An adult male is nude laying on a bed with the child victim, who is also completely nude and sitting on top of the adult male. She is fully visible. The child victim's legs are spread apart and the male's erect penis is inserted into her vagina. The child victim's breasts are exposed. She lacks muscular and breast development, lacks visible pubic hair, and is very small in stature. The child victim appears to be approximately 8-10 years old.

**File 3**

This color image depicts a prepubescent female (hereinafter the "child victim"). The child victim is wearing black stockings, a pink collar, and hoop earrings. The child victim's breasts and genitals are exposed. An adult male's hairy, erect penis is seen being inserted or placed into the child victim's vagina. The child victim lacks muscular and breast development, lacks visible pubic hair, and is very small in stature. The child victim appears to be approximately 6-8 years old.

23.     On November 5, 2019, at approximately 1200 hrs. Group Supervisor (GS) James Healy conducted surveillance of the SUBJECT PREMISES. It is a gray, single story residence with white trim bearing address "7317" in black numbers on white trim to the right of the door when facing the residence from the street. GS Healy took several photographs of the residence and saw children's toys in front of the residence on a table against the residence next to a black barbecue grill. Later, at approximately 1500 hrs. GS Healy saw two cars parked in the driveway of the residence, a white Acura passenger car bearing license plate WAUS/APX8330 and a light green Kia Soul SUV bearing license plate WAUS/BPA5152. At approximately 1520 hours GS Healy saw a balding white male, heavy set, with a long beard wearing black hoodie and pants leave the home walking a small dog and proceed south on Elaine St toward Bay Rd. That person appeared to be the same person shows on the Washington DOL photo associated with

SA LEDGERWOOD AFFIDAVIT - 8
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Jon Lakey (discussed below).  At approximately 1535 hours GS Healy saw the same

2   man return to the home accompanied by a minor male.

3       24.   On November 6, 2019, GS Healy conducted a search via the Washington

4   State Department of Licensing (WSDOL) and learned that Jon LAKEY has a 2007

5   Acura, registered at the SUBJECT PREMISES.  WSDOL also revealed LAKEY was

6   issued a Washington State driver's license on November 10, 2016, with the SUBJECT

7   PRIMISES listed as his address.  WSDOL also revealed the Jon LAKEY and R.K. have

8   a 2013 Kia, registered at the SUBJECT PREMISES.  WSDOL revealed R.K. was issued

9   a Washington State driver's license on January 18, 2017, with the SUBJECT

10  PREMISES listed as R.K.'s address.

11      25.   Records checks conducted via the Whatcom County Assessor's Office

12  revealed that Jon LAKEY and R.K. own the SUBJECT PREMISES.  The SUBJECT

13  PREMISES is listed on the Assessor's web-site as a doublewide manufactured home

14  located on .17 acres.  According to the Assessor's Office, they purchased the house in

15  2006.

16      26.   On December 5, 2019, while conducting surveillance of the SUBJECT

17  PREMISES, I used a portable electronic device to conduct a wireless survey from the

18  public right of way adjacent to the SUBJECT PREMISES and discovered numerous Wi-

19  Fi enabled networks.  These Wi-Fi networks were all locked.  During that survey, I also

20  detected at least one "xfinitywifi" wireless internet network in the area.  Based on my

21  training and experience, I know that Comcast deployed a series of wireless "hotspot"

22  networks for their customers.  Comcast accomplished this by providing their wireless

23  internet customers with updated wireless routers capable of broadcasting an additional

24  wireless network.  These wireless "hotspot" networks are recognized by the connecting

25  device as "xfinitywifi".  Comcast customers can access "xfinitywifi" networks by

26  logging in with their unique Comcast email or username and previously created

27  password.  Of particular importance is that the "xfinitywifi" networks are completely

28  separate from the Comcast customer's private home wireless network(s).   While

SA LEDGERWOOD AFFIDAVIT - 9
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  conducting a prior investigation, an official with Comcast confirmed with me that

2  Comcast's "xfinitywifi" wireless networks are not linked or connected to the Comcast

3  subscriber's internet service.

4       27.    A query of a publicly available database revealed the phone number 360-

5  510-6600 belonged to ATT.  In response to an administrative subpoena seeking

6  subscriber information for that phone number, ATT provided the following information.

7  The billing party for this number is R.K., and the billing address is the SUBJECT

8  PREMISES.  ATT reported that the user of the phone is Jon Lakey and that service

9  between in 2004 and was current as of December 2019.  The contact email for that user

10  was listed as SLAVE524@HOTMAIL.COM.

11       28.    As outlined above, multiple sources of information indicate that Jon

12  LAKEY, currently resides at the SUBJECT PREMISES and resided there on the dates

13  that child pornography files were uploaded from the SUBJECT IP ADDRESS via Jon

14  LAKEY's email account.  I therefore believe that Jon LAKEY likely used a mobile

15  device to distribute child pornography via the Internet, and that evidence of that crime

16  will be found in the SUBJECT PREMISES or on the SUBJECT PERSON.

17  ### V. PRIOR EFFORTS TO OBTAIN EVIDENCE

18       29.    Any other means of obtaining the necessary evidence to prove the elements

19  of computer/Internet-related crimes, for example, a consent search, could result in an

20  unacceptable risk of the loss/destruction of the evidence sought.  If agents pursued a

21  consent-based interview with Jon LAKEY, or any other unknown resident(s) or

22  occupant(s) of the SUBJECT PREMISES, they could rightfully refuse to give consent

23  and the user who distributed child pornography files could arrange for destruction of all

24  evidence of the crime before agents could return with a search warrant.  Based on my

25  knowledge, training and experience, the only effective means of collecting and

26  preserving the required evidence in this case is through a search warrant.  Based on my

27  knowledge, no prior search warrant has been obtained to search the SUBJECT

28  PREMISES or SUBJECT PERSON.

SA LEDGERWOOD AFFIDAVIT - 10
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VI. TECHNICAL BACKGROUND

30.     Based on my training and experience, when an individual communicates through the Internet, the individual leaves an IP address which identifies the individual user by account and ISP (as described above).  When an individual is using the Internet, the individual's IP address is visible to administrators of websites they visit.  Further, the individual's IP address is broadcast during most Internet file and information exchanges that occur.

31.     Based on my training and experience, I know that most ISPs provide only one IP address for each residential subscription.  I also know that individuals often use multiple digital devices within their home to access the Internet, including desktop and laptop computers, tablets, and mobile phones.  A device called a router is used to connect multiple digital devices to the Internet via the public IP address assigned (to the subscriber) by the ISP.  A wireless router performs the functions of a router but also includes the functions of a wireless access point, allowing (wireless equipped) digital devices to connect to the Internet via radio waves, not cables.  Based on my training and experience, today many residential Internet customers use a wireless router to create a computer network within their homes where users can simultaneously access the Internet (with the same public IP address) with multiple digital devices.

32.     Based on my training and experience and information provided to me by computer forensic agents, I know that data can quickly and easily be transferred from one digital device to another digital device.  Data can be transferred from computers or other digital devices to internal and/or external hard drives, tablets, mobile phones, and other mobile devices via a USB cable or other wired connection.  Data can also be transferred between computers and digital devices by copying data to small, portable data storage devices including USB (often referred to as "thumb") drives, memory cards (Compact Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

SA LEDGERWOOD AFFIDAVIT - 11
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

33.     As outlined above, residential Internet users can simultaneously access the Internet in their homes with multiple digital devices.  Also explained above is how data can quickly and easily be transferred from one digital device to another through the use of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage devices (USB drives, memory cards, optical discs).  Therefore, a user could access the Internet using their assigned public IP address, receive, transfer or download data, and then transfer that data to other digital devices which may or may not have been connected to the Internet during the date and time of the specified transaction.

34.     Based on my training and experience, I have learned that the computer's ability to store images and videos in digital form makes the computer itself an ideal repository for child pornography.  The size of hard drives used in computers (and other digital devices) has grown tremendously within the last several years.  Hard drives with the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store thousands of images and videos at very high resolution.

35.     Based on my training and experience, collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by companies such as Google, Yahoo, Apple, and Dropbox, among others.  The online services allow a user to set up an account with a remote computing service that provides email services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

36.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an

SA LEDGERWOOD AFFIDAVIT - 12
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    electronic communication may be automatically stored in many places (e.g., temporary

2    files or ISP client software, among others).  In addition to electronic communications, a

3    computer user's Internet activities generally leave traces or "footprints" and history files

4    of the browser application used.  A forensic examiner often can recover evidence

5    suggesting whether a computer contains wireless software, and when certain files under

6    investigation were uploaded or downloaded.  Such information is often maintained

7    indefinitely until overwritten by other data.

8        37.    Based on my training and experience, I have learned that producers of child

9    pornography can produce image and video digital files from the average digital camera,

10   mobile phone, or tablet.  These files can then transferred from the mobile device to a

11   computer or other digital device, using the various methods described above.  The digital

12   files can then be stored, manipulated, transferred, or printed directly from a computer or

13   other digital device.  Digital files can also be edited in ways similar to those by which a

14   photograph may be altered; they can be lightened, darkened, cropped, or otherwise

15   manipulated.  As a result of this technology, it is relatively inexpensive and technically

16   easy to produce, store, and distribute child pornography.  In addition, there is an added

17   benefit to the child pornographer in that this method of production is a difficult trail for

18   law enforcement to follow.

19       38.    As part of my training and experience, I have become familiar with the

20   structure of the Internet, and I know that connections between computers on the Internet

21   routinely cross state and international borders, even when the computers communicating

22   with each other are in the same state.   Individuals and entities use the Internet to gain

23   access to a wide variety of information; to send information to, and receive information

24   from, other individuals; to conduct commercial transactions; and to communicate via

25   email.

26       39.    Based on my training and experience, I know that cellular mobile phones

27   (often referred to as "smart phones") have the capability to access the Internet and store

28   information, such as images and videos.  As a result, an individual using a smart phone

SA LEDGERWOOD AFFIDAVIT - 13
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   can send, receive, and store files, including child pornography, without accessing a

2   personal computer or laptop.  An individual using a smart phone can also easily connect

3   the device to a computer or other digital device, via a USB or similar cable, and transfer

4   data files from one digital device to another.

5         40.    As set forth herein and in Attachment B to this Affidavit, I seek permission

6   to search for and seize evidence, fruits, and instrumentalities of the above-referenced

7   crimes that might be found at the SUBJECT PREMISES or on the SUBJECT PERSON

8   in whatever form they are found.  It has been my experience that individuals involved in

9   child pornography often prefer to store images of child pornography in electronic form.

10  The ability to store images of child pornography in electronic form makes digital

11  devices, examples of which are enumerated in Attachment B to this Affidavit, an ideal

12  repository for child pornography because the images can be easily sent or received over

13  the Internet.  As a result, one form in which these items may be found is as electronic

14  evidence stored on a digital device.

15        41.    Based upon my knowledge, experience, and training in child pornography

16  investigations, and the training and experience of other law enforcement officers with

17  whom I have had discussions, I know that there are certain characteristics common to

18  individuals who have a sexualized interest in children and depictions of children:

19        a.    They may receive sexual gratification, stimulation, and satisfaction

20  from contact with children; or from fantasies they may have viewing children engaged in

21  sexual activity or in sexually suggestive poses, such as in person, in photographs, or other

22  visual media; or from literature describing such activity.

23        b.    They may collect sexually explicit or suggestive materials in a

24  variety of media, including photographs, magazines, motion pictures, videotapes, books,

25  slides, and/or drawings or other visual media.  Such individuals often times use these

26  materials for their own sexual arousal and gratification.  Further, they may use these

27  materials to lower the inhibitions of children they are attempting to seduce, to arouse the

28  selected child partner, or to demonstrate the desired sexual acts.  These individuals may

SA LEDGERWOOD AFFIDAVIT - 14
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

keep records, to include names, contact information, and/or dates of these interactions, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

c.      They often maintain any "hard copies" of child pornographic material that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  These individuals typically retain these "hard copies" of child pornographic material for many years, as they are highly valued.

d.      Likewise, they often maintain their child pornography collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, often at the individual's residence or some otherwise easily accessible location, to enable the owner to view the collection, which is valued highly. They also may opt to store the contraband in cloud accounts. Cloud storage is a model of data storage where the digital data is stored in logical pools, the physical storage can span multiple servers, and often locations, and the physical environment is typically owned and managed by a hosting company. Cloud storage allows the offender ready access to the material from any device that has an Internet connection, worldwide, while also attempting to obfuscate or limit the criminality of possession as the material is stored remotely and not on the offender's device.

e.      They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

SA LEDGERWOOD AFFIDAVIT - 15
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.     They generally prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.     E-mail itself provides a convenient means by which individuals can access a collection of child pornography from any computer, at any location with Internet access.  Such individuals therefore do not need to physically carry their collections with them but rather can access them electronically.   Furthermore, these collections can be stored on email "cloud" servers, which allow users to store a large amount of material at no cost, without leaving any physical evidence on the users' computer(s).

42.    In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification.  In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification.  I know that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person.  This evidence may include the files themselves, logs of account access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

43.    Given the above-stated facts, including the circumstances surrounding the Apple Inc CyberTip and based on my knowledge, training and experience, along with my discussions with other law enforcement officers who investigate child exploitation

SA LEDGERWOOD AFFIDAVIT - 16
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  crimes, I believe that the email slave524@icloud.com user likely has a sexualized

2  interest in children and depictions of children.  I therefore believe that evidence of child

3  pornography is likely to be found at the SUBJECT PREMISES or on the SUBJECT

4  PERSON because LAKEY is the user of that email and resides at the SUBJECT

5  PREMISES.

6       44.    Based on my training and experience, and that of computer forensic agents

7  that I work and collaborate with on a daily basis, I know that every type and kind of

8  information, data, record, sound or image can exist and be present as electronically

9  stored information on any of a variety of computers, computer systems, digital devices,

10  and other electronic storage media.  I also know that electronic evidence can be moved

11  easily from one digital device to another.  As a result, I believe that electronic evidence

12  may be stored on any digital device present at the SUBJECT PREMISES or on the

13  SUBJECT PERSON.

14       45.    Based on my training and experience, and my consultation with computer

15  forensic agents who are familiar with searches of computers, I know that in some cases

16  the items set forth in Attachment B may take the form of files, documents, and other data

17  that is user-generated and found on a digital device.  In other cases, these items may take

18  the form of other types of data - including in some cases data generated automatically by

19  the devices themselves.

20       46.    Based on my training and experience, and my consultation with computer

21  forensic agents who are familiar with searches of computers, I believe that if digital

22  devices are found in the SUBJECT PREMISES or on the SUBJECT PERSON, there is

23  probable cause to believe that the items set forth in Attachment B will be stored in those

24  digital devices for a number of reasons, including but not limited to the following:

25       a.    Once created, electronically stored information (ESI) can be stored

26  for years in very little space and at little or no cost.  A great deal of ESI is created, and

27  stored, moreover, even without a conscious act on the part of the device operator.  For

28  example, files that have been viewed via the Internet are sometimes automatically

SA LEDGERWOOD AFFIDAVIT - 17
USAO #2020R00035

1  downloaded into a temporary Internet directory or "cache," without the knowledge of the

2  device user.  The browser often maintains a fixed amount of hard drive space devoted to

3  these files, and the files are only overwritten as they are replaced with more recently

4  viewed Internet pages or if a user takes affirmative steps to delete them.  This ESI may

5  include relevant and significant evidence regarding criminal activities, but also, and just

6  as importantly, may include evidence of the identity of the device user, and when and

7  how the device was used.  Most often, some affirmative action is necessary to delete ESI.

8  And even when such action has been deliberately taken, ESI can often be recovered,

9  months or even years later, using forensic tools.

10       b.     Wholly apart from data created directly (or indirectly) by user-

11  generated files, digital devices - in particular, a computer's internal hard drive - contain

12  electronic evidence of how a digital device has been used, what is has been used for, and

13  who has used it.  This evidence can take the form of operating system configurations,

14  artifacts from operating systems or application operations, file system data structures, and

15  virtual memory "swap" or paging files.  Computer users typically do not erase or delete

16  this evidence, because special software is typically required for that task.  However, it is

17  technically possible for a user to use such specialized software to delete this type of

18  information - and, the use of such special software may itself result in ESI that is relevant

19  to the criminal investigation.  HSI agents in this case have consulted on computer

20  forensic matters with law enforcement officers with specialized knowledge and training

21  in computers, networks, and Internet communications.  In particular, to properly retrieve

22  and analyze electronically stored (computer) data, and to ensure accuracy and

23  completeness of such data and to prevent loss of the data either from accidental or

24  programmed destruction, it is necessary to conduct a forensic examination of the

25  computers.  To effect such accuracy and completeness, it may also be necessary to

26  analyze not only data storage devices, but also peripheral devices which may be

27  interdependent, the software to operate them, and related instruction manuals containing

28  directions concerning operation of the computer and software.

SA LEDGERWOOD AFFIDAVIT - 18
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VII. SEARCH AND/OR SEIZURE OF DIGITAL DEVICES

47.     In addition, based on my training and experience and that of computer forensic agents that I work and collaborate with on a daily basis, I know that in most cases it is impossible to successfully conduct a complete, accurate, and reliable search for electronic evidence stored on a digital device during the physical search of a search site for a number of reasons, including but not limited to the following:

a.     Technical Requirements:  Searching digital devices for criminal evidence is a highly technical process requiring specific expertise and a properly controlled environment.  The vast array of digital hardware and software available requires even digital experts to specialize in particular systems and applications, so it is difficult to know before a search which expert is qualified to analyze the particular system(s) and electronic evidence found at a search site.  As a result, it is not always possible to bring to the search site all of the necessary personnel, technical manuals, and specialized equipment to conduct a thorough search of every possible digital device/system present.  In addition, electronic evidence search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is often essential to ensure its complete and accurate analysis.

b.     Volume of Evidence:  The volume of data stored on many digital devices is typically so large that it is impossible to search for criminal evidence in a reasonable period of time during the execution of the physical search of a search site.  A single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to four terabytes (4,000 gigabytes of data.)  Additionally,

1   this data may be stored in a variety of formats or may be encrypted (several new

2   commercially available operating systems provide for automatic encryption of data upon

3   shutdown of the computer).

4           c.    Search Techniques:  Searching the ESI for the items described in

5   Attachment B may require a range of data analysis techniques.  In some cases, it is

6   possible for agents and analysts to conduct carefully targeted searches that can locate

7   evidence without requiring a time-consuming manual search through unrelated materials

8   that may be commingled with criminal evidence.   In other cases, however, such

9   techniques may not yield the evidence described in the warrant, and law enforcement

10  personnel with appropriate expertise may need to conduct more extensive searches, such

11  as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

12  determine whether it falls within the scope of the warrant.

13      48.    In this particular case, and in order to protect the third party privacy of

14  innocent individuals residing in the residence, the following are search techniques that

15  will be applied:

16          i.    Device use and ownership will be determined through interviews, if

17  possible, and through the identification of user account(s), associated account names, and

18  logons associated with the device.  Determination of whether a password is used to lock a

19  user's profile on the device(s) will assist in knowing who had access to the device or

20  whether the password prevented access.

21          ii.    Use of hash value library searches.

22          iii.    Use of keyword searches, i.e., utilizing key words that are known to

23  be associated with the sharing of child pornography.

24          iv.    Identification of non-default programs that are commonly known to

25  be used for the exchange and viewing of child pornography, such as, eMule, uTorrent,

26  BitTorrent, Ares, Shareaza, Gnutella, etc.

27

28

SA LEDGERWOOD AFFIDAVIT - 20
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        v.     Looking for file names indicative of child pornography, such as,

2 PTHC, PTSC, Lolita, 3yo, etc. and file names identified during the undercover download

3 of child pornography.

4        vi.     Viewing of image files and video files.

5        vii.    As indicated above, the search will be limited to evidence of child

6 pornography and will not include looking for personal documents and files that are

7 unrelated to the crime.

8    49.    These search techniques may not all be required or used in a particular

9 order for the identification of digital devices containing items set forth in Attachment B

10 to this Affidavit.  However, these search techniques will be used systematically in an

11 effort to protect the privacy of third parties.  Use of these tools will allow for the quick

12 identification of items authorized to be seized pursuant to Attachment B to this Affidavit,

13 and will also assist in the early exclusion of digital devices and/or files which do not fall

14 within the scope of items authorized to be seized pursuant to Attachment B to this

15 Affidavit.

16    50.    In accordance with the information in this Affidavit, law enforcement

17 personnel will execute the search of digital devices seized pursuant to this warrant as

18 follows:

19        a.     Upon securing the search site, the search team will conduct an initial

20 review of any digital devices/systems to determine whether the ESI contained therein can

21 be searched and/or duplicated on site in a reasonable amount of time and without

22 jeopardizing the ability to accurately preserve the data.

23        b.     If, based on their training and experience, and the resources

24 available to them at the search site, the search team determines it is not practical to make

25 an on-site search, or to make an on-site copy of the ESI within a reasonable amount of

26 time and without jeopardizing the ability to accurately preserve the data, then the digital

27 devices will be seized and transported to an appropriate law enforcement laboratory for

28 review and to be forensically copied ("imaged"), as appropriate.

SA LEDGERWOOD AFFIDAVIT - 21
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    c.    In order to examine the ESI in a forensically sound manner, law

2  enforcement personnel with appropriate expertise will produce a complete forensic

3  image, if possible and appropriate, of any digital device that is found to contain data or

4  items that fall within the scope of Attachment B of this Affidavit.  In addition,

5  appropriately trained personnel may search for and attempt to recover deleted, hidden, or

6  encrypted data to determine whether the data fall within the list of items to be seized

7  pursuant to the warrant.  In order to search fully for the items identified in the warrant,

8  law enforcement personnel, which may include investigative agents, may then examine

9  all of the data contained in the forensic image/s and/or on the digital devices to view their

10  precise contents and determine whether the data fall within the list of items to be seized

11  pursuant to the warrant.

12    d.    The search techniques that will be used will be only those

13  methodologies, techniques and protocols as may reasonably be expected to find, identify,

14  segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

15  this Affidavit.

16    e.    If, after conducting its examination, law enforcement personnel

17  determine that any digital device is an instrumentality of the criminal offenses referenced

18  above, the government may retain that device during the pendency of the case as

19  necessary to, among other things, preserve the instrumentality evidence for trial, ensure

20  the chain of custody, and litigate the issue of forfeiture.

21    51.    In order to search for ESI that falls within the list of items to be seized

22  pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

23  search the following items (heretofore and hereinafter referred to as "digital devices"),

24  subject to the procedures set forth above:

25    a.    Any digital device capable of being used to commit, further, or store

26  evidence of the offense(s) listed above;

27

28

SA LEDGERWOOD AFFIDAVIT - 22
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.     Any digital device used to facilitate the transmission, creation,

2 display, encoding, or storage of data, including word processing equipment, modems,

3 docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

4          c.     Any magnetic, electronic, or optical storage device capable of

5 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

6 memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

7 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

8          d.     Any documentation, operating logs and reference manuals regarding

9 the operation of the digital device, or software;

10          e.     Any applications, utility programs, compilers, interpreters, and other

11 software used to facilitate direct or indirect communication with the device hardware, or

12 ESI to be searched;

13          f.     Any physical keys, encryption devices, dongles and similar physical

14 items that are necessary to gain access to the digital device, or ESI; and

15          g.     Any passwords, password files, test keys, encryption codes or other

16 information necessary to access the digital device or ESI.

17

18

19

20

21

22

23

24

25

26

27

28

SA LEDGERWOOD AFFIDAVIT - 23
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VIII. CONCLUSION

52.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), are located at the SUBJECT PREMISES or on the SUBJECT PERSON as more fully described in Attachment A to this Affidavit, as well as on and in any digital devices found therein.  I therefore request that the court issue a warrant authorizing a search of the location, vehicles, and person specified in Attachment A for the items more fully described in Attachment B.


Toby Ledgerwood, Affiant
Special Agent
Department of Homeland Security
Homeland Security Investigations


The above named agent provided a sworn statement attesting to the truth of the foregoing affidavit this  17  day of January, 2020.


BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

SA LEDGERWOOD AFFIDAVIT - 24
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **ATTACHMENT A**

### **Description of Property to be Searched**

The physical address of the SUBJECT PREMISES is 7317 Elaine Street, Blaine, Washington, and is more fully described as the property containing a manufactured residence with gray colored siding and white trim around the windows.  The numbers 7317 are affixed in black lettering on a white in color pillar to the right side of the front door when facing the residence from the street.  There are windows located on either side of the door.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      The search is to include all rooms within the SUBJECT PREMISES, and all

2  garages or storage rooms, attached or detached, or other outbuildings, and any digital

3  device(s) found therein.  However, if law enforcement can reasonably determine onsite

4  that the SUBJECT PERSON neither owns nor has access to a particular digital device,

5  this warrant does not authorize the search or seizure of any such digital device.

6      The SUBJECT PERSON is further described as JON LAKEY, DOB XX/XX/74,

7  pictured below:



ATTACHMENT A - 2
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON:

1. Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media;

2. Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3. Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4. All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5. Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6. Any non-digital recording devices and non-digital media capable of storing images and videos.

7. Digital devices and/or their components, which include, but are not limited to:

    a. Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above;

ATTACHMENT B - 1
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         b.     Any digital devices used to facilitate the transmission, creation,

2 display, encoding or storage of data, including word processing equipment, modems,

3 docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

4         c.     Any magnetic, electronic, or optical storage device capable of

5 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

6 memory buffers, smart cards, PC cards, memory sticks, flash drives, USB/thumb drives,

7 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

8         d.     Any documentation, operating logs and reference manuals regarding

9 the operation of the digital device or software;

10         e.     Any applications, utility programs, compilers, interpreters, and other

11 software used to facilitate direct or indirect communication with the computer hardware,

12 storage devices, or data to be searched;

13         f.     Any physical keys, encryption devices, dongles and similar physical

14 items that are necessary to gain access to the computer equipment, storage devices or

15 data; and

16         g.     Any passwords, password files, test keys, encryption codes or other

17 information necessary to access the computer equipment, storage devices or data;

18    8.     Evidence of who used, owned or controlled any seized digital device(s) at

19 the time the things described in this warrant were created, edited, or deleted, such as logs,

20 registry entries, saved user names and passwords, documents, and browsing history;

21    9.     Evidence of malware that would allow others to control any seized digital

22 device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

23 as evidence of the presence or absence of security software designed to detect malware;

24 as well as evidence of the lack of such malware;

25    10.    Evidence of the attachment to the digital device(s) of other storage devices

26 or similar containers for electronic evidence;

27    11.    Evidence of counter-forensic programs (and associated data) that are

28 designed to eliminate data from a digital device;

ATTACHMENT B - 2
USAO #2020R00035

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Evidence of times the digital device(s) was used;

13.     Any other ESI from the digital device(s) necessary to understand how the digital device was used, the purpose of its use, who used it, and when.

14.     Records and things evidencing the use of the IP address 172.98.86.39 (the SUBJECT IP ADDRESS) including:

a.     Routers, modems, and network equipment used to connect computers to the Internet;

b.     Records of Internet Protocol (IP) addresses used;

c.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970